UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

    Plaintiff,

                                         Case No. 06-20122
-vs-                                  HON AVERN COHN

D-11, VINCENZO BRONZINO,

    Defendant.

_____/

## **DECISION**

### I.

This is a criminal case tried to the bench. On August 2, 2007, the Court found defendant guilty of a violation of 18 U.S.C. §§1956(a)(1)(A)(I) and (B)(ii) and 2 (Money Laundering, Aiding and Abetting), following oral argument. It explained its reasons from the bench. This Decision is a revision of the Court's reasons. See Fed. R. Crim. P. 23(c).

### II.

### A.

The indictment reads:

> 1. That on or about October 22, 2003 through October 30, 2003, in the Eastern District of Michigan, Peter Dominic Tocco, Peter Joseph Messina, David John Aceto, Alan H. Russell, a/k/a "Shorty," and Vincenzo Bronzino, defendants herein, did knowingly cause to be conducted and attempt to conduct a financial transaction, to wit: a series of transactions intended to convert 15 chips, issued by Greektown Casino, each valued at $1,000, into United States currency, knowing that the chips constituted criminally

derived property from a specified unlawful activity, to wit: gambling, in violation of the laws of the State of Michigan (Section 750.157(a)(b) of the Michigan Compiled Laws Annotated) as more particularly described in Paragraph 3A of Count One of this Indictment, which description is incorporated herein by reference:

    A.    With the intent to promote the carrying on of that unlawful activity, i.e., gambling, in violation of the laws of the State of Michigan; and

    B.    Knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under State or Federal law.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(I) and (B)(ii) and 2.

### B.

The parties stipulated to the following:

a.    That Defendant Vincenzo Bronzino gave 15 one-thousand Greektown Casino chips to Peter Messina on or about October 22, 2003, knowing that said chips constituted the proceeds of a specified unlawful activity, i.e., gambling proceeds, in violation of the laws of the State of Michigan.

b.    That Peter Dominic Tocco, Peter Joseph Messina and others converted $15,000.00 in Greektown Casino chips into cash in a manner intended to avoid the requirement that such cash transactions be reported and with the intent to promote the carrying on of gambling, in violation of the laws of the State of Michigan.

c.    That the Greektown Casino is a financial institution as defined in 18 U.S.C. §1956(4)(6)(A) and 31 U.S.C. §5312(a)(2)(X).

d.    Prior to Vincenzo Bronzino giving Peter Dominic Tocco or Peter Joseph Messina 15 one thousand dollar Greektown Casino chips, the chips were legally held by Bronzino and were not proceeds of unlawful gambling activity.

In addition to the stipulated facts, the government's proofs principally consisted of

two (2) intercepted phone conversations between defendant Bronzino and Messina, which went as follows.

C.

On October 22, 2003, Bronzino called Messina.

    Bronzino:    All right.  Let me explain something to you.

    Messina:    What?

    Bronzino:    I've got the money on me, all right?

    Messina:    Okay.

    Bronzino:    But I don't got it, I don't got it all.  I got some cash and I got to go, go cash 'em in.  I got chips.  Casino chips.

In this part of the conversation, Bronzino is telling Messina he is willing to pay the debt with casino chips.  The conversation goes on:

    Messina:    Uh-huh.

    Bronzino:    Would you want those or do you want me to work –

    Messina:    How much is in chips?

    Bronzino:    I've got nine in cash, and I can give you fifteen in chips.

    Messina:    I don't want the chips. . . .

Messina responds that he does not want to be paid in chips.  The conversation goes on:

    Messina:    I can't go cash 'em in.

    Bronzino:    I'm just saying, it's up to you.

    Messina:    You have to sign for them.

Again, Messina is telling Bronzino he doesn't want them because he's got to go through a rigamarole to cash them in. The conversation continues:

> Bronzino: No you ain't got to sign. There's no signing.
>
> Messina: When you cash them in, you do.

In this part of the conversation, Messina displays a lack of knowledge of what goes on in a casino. The conversation goes on:

> Bronzino: No, you don't. You don't have to sign. You have to take you and another person to split it in half. Under ten thousand you don't have to sign. You don't have to give them ID or nothing.
>
> Messina: Hmmrmph.
>
> Bronzino: You go to Greektown.
>
> Messina: Are you –
>
> Bronzino: That's how it is. That's how it is, believe me. I do that every day. Every day I got these cash. I go down there and I cash in nine, then I wait twenty four hours and I cash in another nine. They don't have, they don't need no ID, no nothing.

In this part of the conversation, Bronzino is trying to convince Messina to take the chips and explaining how he should go about cashing them.

This concludes the first phone call. In sum, Bronzino has instructed Messina how he can cash in the chips in an effort to induce him into accepting them as partial payment for his gambling debt.

D.

A follow-up conversation takes place the next day, October 23, 2003, which goes as follows:

> Bronzino: Hello.
>
> Messina: Enzo.
>
> Bronzino: Eh, yeah.
>
> Messina: Is there a casino host down there I can talk to to make sure they don't give me a hard time about cashin' these chips?

In this part of the conversation, Messina displays hesitancy and naivete as well as concern about his ability to cash in the chips. Messina is obviously aware that if the chips are cashed in a single transaction, a report must be filed with the Internal Revenue Service. The conversation goes on:

> Bronzino: I'm tellin' you . . . you, you goin' by yourself?
>
> Messina: Oh, no. . . . I got me and two other guys.
>
> Bronzino: Okay. Split them up between you three. You'll have no problem.

Again, Bronzino is instructing Messina. The conversation goes continues:

> Messina: Well, what do . . .
>
> Bronzino: You.
>
> Messina: . . . what do I gotta do, just, if they ask me questions, where did I play?

Messina is again displaying his naivete. Bronzino responds:

> Bronzino: Nothing. You say you had 'em in your pocket. From a long time ago, don't worry about it.

Bronzino is effectively writing a scenario for Messina to follow in cashing in the chips. The conversation goes on:

> Messina: And if they ask me for my driver's license?

5

Again, Messina is displaying hesitancy. The conversation goes on:

> Bronzino: Don't give it to 'em. If they, you know, it doesn't, it doesn't, it doesn't even show on record, don't worry about it.
>
> Messina: All right.

Bronzino is building up Messina's confidence in his ability to accept the chips and cash them in without having a report filed. The conversation continues:

> Messina: All right.
>
> Bronzino: I mean I give, I give my driver's license all the time.
>
> Messina: Ok.
>
> Bronzino: They ask you, but you don't have to if you don't want to.
>
> Messina: Alright.
>
> Bronzino: Alright?

Messina is finally persuaded to take the chips. Later that day, Messina and two (2) of his associates cash in the chips at the casino.

III.

A.

The facts here are analogous to what took place in United States v. Winston, 687 F.2d 832 (6th Cir. 1982), on which the government relies, and are dissimilar to what occurred in Morei v. United States, 127 F.2d 827 (6th Cir. 1942), on which defendant relies.

In Winston, the defendant was convicted of aiding and abetting in the possession of cocaine with the intent to distribute. While he took no part in the actual exchange of

6

the cocaine, he put the transaction together, and in essence acted as salesman for the supplier and set up the sale, and introduced the parties and quoted a price. The Sixth Circuit, in affirming the conviction, said:

> Appellant was the catalyst who put this transaction together . . . . . He set up the sale. He introduced the parties. He quoted a price to Dr. Pigford after he was told the amount of cocaine Dr. Pigford desired to purchase. The ultimate inference is that appellant acted with the specific intent to facilitate the sale of the cocaine from Ms. Couvillon to Dr. Pigford. He clearly knew what was going on, and he intended by his actions to make the illegal venture succeed. See United States v. Bryant, supra, 461 F.2d at 911-20 (evidence sufficient to support a conviction for aiding and abetting in the sale of untaxed whiskey, but conviction reversed for inadequate jury instructions).

687 F.2d at 835.

In Morei, several defendants were convicted of the unlawful purchase, sale, and distribution of heroin to be used to dose horses, and conspiracy regarding the same. The Court of Appeals for the Sixth Circuit reversed one of the defendant's, Dr. Platt who was charged as an aider or abettor, conviction for insufficient evidence because there was no concert of action between Dr. Platt and the other defendants. The court of appeals' reasoning was very fact specific, based on Dr. Platt's conduct which apparently only involved him giving an informer the name of one of the defendants as a person from whom he might obtain heroin to dose horses.

Here, Bronzino's actions go far beyond those of Dr. Platt in Morei and are of the level of involvement like the defendant in Winston. Bronzino was the teacher and Messina was the pupil. To put it another way, Bronzino was the director and Messina was the actor. Messina was fully aware of the fact that the chips were to be used to pay

7

his gambling debt, only if Messina could cash them in a way that did not cause a report to the IRS to be generated. Initially, Messina did not know how to accomplish this. Once instructed by Bronzino, however, he was able to do so. This is a classic case of an aider and abetter to money laundering, and for these reasons Bronzino is guilty of the crime charged.

                                    s/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE

Dated: August 14, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 14, 2007, by electronic and/or ordinary mail.

                                    s/Julie Owens
                                    Case Manager, (313) 234-5160